**UNITED STATES OF AMERICA,**   )
                               )    **Case No. <u>4:14-cr-4</u>**

**v.**                                )
                               )    **Judge Mattice**

**JOSEPH TODD NEILL**        )

# DEFENDANT'S MOTION FOR VARIANCE AND SENTENCING MEMORANDUM

COMES NOW Defendant herein, **JOSEPH TODD NEILL**, through counsel, and respectfully moves this Honorable Court to impose a sentence in this case that varies from the one contemplated by the Sentencing Guidelines in his case. Defendant further submits that both the circumstances related to the offense and the characteristics of this Defendant support a sentence less lengthy than that calculated by the guidelines.

## *I. The Offense*

In 2012, Joseph Todd Neill was a youth pastor at the North Fork Baptist Church in Bedford County, Tennessee. Although Defendant is married, with two children, he became involved with a then sixteen year-old member of the same church. As a result of that relationship, Mr. Neill engaged in inappropriate sexual contact with that minor on at least two occasions. In the course of investigating that relationship, the City of Shelbyville Police Department seized and searched a cellphone belonging to Mr. Neill. While

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

searching that cellphone, authorities found a number of images of minors engaged in sexually explicit conduct. Many, if not all, of the images of child pornography on Defendant's cellphone were produced outside of the state of Tennessee and were transported in interstate commerce to places inside of Tennessee. Further, many, if not all, of the images were created and shipped on computers and other devices that had been shipped in interstate and foreign commerce.

On March 7, 2014, Defendant pled guilty to a one-count information. Count 1 charged Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and 18 U.S.C. § 2252A(b)(2). Pursuant to that plea, Mr. Neill self-surrendered on March 7, 2014, and he has been continuously detained, pending sentencing.

On April 28, 2014, a Presentence Investigation Report was filed by Mr. Gary P. Turney, United States Probation Officer, Chattanooga, Tennessee. After an appropriate adjustment for acceptance of responsibility, and Defendant's presumptively receiving an additional one-level decrease, pursuant to USSG § 3E1.1(b), Mr. Turney calculated a Total Offense Level of **23**, based upon which the guideline imprisonment range is 46 months to 57 months. On May 12, 2014, defense counsel filed Defendant's Objections to the Presentence Investigation Report, in accordance with LR83.9(c) of the Local Rules of the Eastern District of Tennessee. Based on those objections, Defendant respectfully suggested that the proper Total Offense Level should be **15**, with a corresponding guideline

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

imprisonment range of between 18 months and 24 months. However, although the offense is a Class C felony, because the applicable guideline range is in Zone D of the Sentencing Table, Mr. Neill is ineligible for probation. USSG § 5B1.1, comment (n.2). Further, on July 7, 2014, Defendant, through counsel, filed both a Psychosexual Assessment conducted by Bertin Glennon, Ph.D., Center for Individual and Family Effectiveness, Chattanooga, Tennessee, and thirty-nine (39) character reference letters written on his behalf by family, friends and acquaintances, all requested to be considered by the Court in the sentencing hearing now scheduled for July 21, 2014.

## II. *Sentencing Factors in General*

Since *United States v. Booker*, 542 U.S. 220 (2005), the Sentencing Guidelines have been declared as advisory, and sentencing courts have been directed to consider all factors listed in 18 U.S.C. § 3553(a) in fashioning a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in the statute. These factors include:

    (1) **the nature and circumstances of the offense and the history and characteristics of the defendant;**

    (2) **the need for the sentence imposed-**

        **(A)**      **to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

        **(B)**      **to afford adequate deterrence to criminal conduct;**

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

3 of 27

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed education of vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory guideline range];
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.
>
> 18 U.S.C. § 3553(a).

Stated differently, after *Booker*, a sentencing court must (1) correctly calculate the advisory guideline range and (2) determine a reasonable sentence by considering the sentencing range provided by the Sentencing Guidelines and the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

In making this determination, a district court may not simply presume that the guideline sentence is the correct sentence. *Nelson v. United States*, 555 U.S. 350, 352 (2009). The Court must "treat the Guidelines as the starting point and initial benchmark." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (internal quotations omitted). However, the Guidelines are, again, advisory only, and the sentencing court "may hear arguments...that the Guideline sentence should not apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). In fact, it has been recognized that a sentence within the Guideline range is not

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

necessarily a reasonable sentence. *See*, *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("there are many instances where the guideline range will not yield a reasonable sentence...in some cases it may be appropriate to defer to the guidelines; in others not."). Further, the Supreme Court has even instructed sentencing courts to "make an individualized assessment based on the facts presented" in each particular case, *Gall v. United States*, 552 U.S. 38, 49-50 (2007), and other courts, including the *Sixth Circuit,* have reminded trial courts that "district court judges are involved in an exercise of judgment, not a ritual." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). All of these caveats, therefore, are particularly apt in determining a sentence for a defendant who has pled guilty to possession of child pornography.

Finally, a sentencing court may disagree with the sentence called for by the guidelines on policy grounds. *See*, e.g., *Kimbrough*, 522 U.S., at 101. In other words, this Court is free to disagree with the advisory guideline range on general policy grounds, individualized fact grounds, or simply because this Court concludes that a different sentence is appropriate "regardless" of the guideline range. *Rita*, 551 U.S., at 347, 351 and 356.

Thus, the challenge in this case, as in other cases involving child pornography, is to determine a fair sentence that is sufficient, but not greater than necessary. A sentence that is too lenient deprecates the seriousness of the crime and fails to promote respect for the law. At the other extreme, a sentence

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

that is too severe is unjust, and, therefore, also fails to promote respect for and <u>confidence in</u> the law.

### III. 18 U.S.C. § 3553(a)(1):
### *The Nature and Circumstances of the Offense and the History and Characteristics of Defendant*

Section 3553(a)(1) requires that this Court consider both "the nature and circumstances of the offense" and "the history and characteristics" of this Defendant as factors in determining an appropriate sentence to be imposed. In this regard, the Sentencing Guidelines do not otherwise address a defendant's personal characteristics, except for criminal history, so application of this section is particularly relevant in this case.

To begin with, in this Defendant's *Objections to the Presentence Investigation Report*, he respectfully disagreed with the conclusory statement made by United States Probation Officer Turney that "[a]t least one of the pictures possessed by the defendant in this case reflects a prepubescent minor who has not obtained the age of twelve", which conclusory statement mandates an increase by two (2) levels under USSG § 2G2.2(b)(2). In this regard, the Sentencing Commission has not defined the term "prepubescent", and that term is not defined in the offenses covered by this Guideline. Further, Defendant has pointed out that, although this enhancement is phrased in terms of strict liability, the *Eleventh Circuit* has stated that the enhancement does not apply where a defendant did not <u>intend</u> to receive material involving prepubescent

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

children or children under twelve years old. *See*, *United States v. Cole*, 61 F.3d 24 (11th Cir. 1995). Additionally, the *Fifth Circuit* has suggested that this enhancement has a *mens rea* requirement, concluding that the trial court must find that a defendant intentionally ordered and possessed child pornography which depicted pubescent minors or minors under the age of twelve. *Kimbrough*, 69 F.3d, at 734. Mr. Turney also, in describing the offense conduct, states that, "...at least one [of the images] is of a prepubescent minor who has not attained the age of twelve;...", and he also says that, "[a]t least one of the actual minors is a known victim who was the victim of sexual molestation from the age of five to nine". However, Mr. Turney does not suggest either that this Defendant knew this known victim or that the "prepubescent minor who has not attained the age of twelve" <u>was</u> this known victim. Further, as explained in the objections, the defense has not been provided with any information that would verify that this Defendant knew, or even should have known, the age of this supposed "prepubescent minor who had not attained the age of twelve", and that, despite that knowledge, he knowingly and intentionally possessed that image.

Additionally, and, again, as was pointed out in Defendant's objections, defense counsel was "allowed" to view the materials that were forensically extracted from Defendant's electronic device, although defense counsel was not furnished with physical copies thereof. During defense counsel's review of the images, which review took place at the Office of the District Attorney General for the 17th Judicial District and was limited by time-constraints, defense

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

counsel does recall seeing one (1) image that depicted purported bondage. However, defense counsel also specifically recalls making comment to Assistant District Attorney Richard A. Cawley that it was not clear whether the subject portrayed in that image was a minor, *i.e.*, under the age of eighteen years. In this regard, defense counsel respectfully understands that the law requires that it must be <u>apparent</u> that the image depicts sexual activity involving a <u>child</u> and that the depicted activity would have caused pain to the <u>minor</u>. Further, defense counsel understands that, in order to be deemed <u>sadistic</u> conduct, the conduct must involve sexual penetration of a young child.

In this regard, Mr. Turney makes specific conclusory remarks that "[s]even of the images possessed by the defendant in this case depicted child rape; and one of those pictures depicts bondage and child rape." However, the defense respectfully suggests that many, if not most of, the thirty-seven (37) images of "real children" are not, positively, images of minors, at all. In fact, and, again, defense counsel is relying upon his recollection of his singular, time-constrained viewing of the retrieved images during his investigation of the state court charges, and it is defense counsel's understanding that *Sixth Circuit* precedent has made clear that an act of sexual penetration is, per se, sadistic, <u>only</u> when it involves an adult male penetrating a prepubescent minor. *United States v. Groenendal*, 557 F.3d 419 (6th Cir. 2009).

Additionally, as was also referenced in the objections, there is a serious issue concerning the image count involved in this case. In this regard, as Mr.

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

Turney suggests, 37 of the 72 supposed images depicting minors engaged in sexually explicit conduct are the only images of "real" children. 9 of the 72 images are <u>cartoon images</u> allegedly depicting minors engaged in sexually explicit activities, therefore, those images are protected under the *First Amendment*. <u>*See*</u>, <u>*Ashcroft v. Free Speech Coalition*</u>, 535 U.S. 234 (2002). 26 of the images allegedly depict minors in "sexually explicit poses wearing minimal clothing or lingerie". With regard to those images, Defendant respectfully suggests that this type of "child erotica" does not meet the definition of child pornography, as analyzed using the factors enunciated in <u>*Dost*</u> and its progeny. <u>*United States v. Dost*</u>, 636 F.Supp. 828 (USDC, S.Dist. CA, June 12, 1986). Moreover, and, as aforesaid, many, if not most of, the remaining 37 images allegedly depicting minors engaged in sexually explicit activities likely were not minors, at all, given that many had tattoos, belly-button piercings and the like, which are, uniformly, and in this country, prohibited to be obtained by minors, even with parental consent. Therefore, Defendant respectfully suggests that the <u>actual relevant image count</u> in this case may involve fewer than **ten (10) images** of verifiable child pornography.

The true nature and circumstances of Mr. Neill's offense is likely that he possessed fewer than ten (10) images which qualify as child pornography. Mr. Neill has also taken responsibility for his conduct. That offense conduct, measured solely by the limited number of images, is substantially less serious than most of the numerous child pornography prosecutions before this and

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

every other district court each year. Further, as evidenced by the numerous documents in the nature of character reference letters, written on his behalf by family, friends and acquaintances, previously filed with the Court on July 7, 2014, together with the copies of photographs filed herewith as *Collective Exhibit "A"* to this pleading, Mr. Neill is not a typical child pornography offender.

However, before addressing some of the points made by his character reference letters, it must be acknowledged that Mr. Neill committed a serious offense. Nevertheless, the defense would respectfully suggest to the Court that Defendant should be treated as a first-time child pornography **possession only offender**, despite his having regrettably become involved, by sexual contact, with an underaged member of the church at which he was a youth pastor. First, that unlawful sexual contact did not occur until <u>after</u> Defendant had resigned from his position as a youth pastor. Moreover, it must be clear that there was <u>no correlation</u>, whatsoever, between his relationship with the young lady and his possession of images deemed to constitute child pornography. Further, the images deemed to constitute child pornography had no relationship to the young lady, did not depict her in any of them, were not used in any fashion, whatsoever, to induce the young lady to engage in prohibited sexual contact and were never shown to nor distributed to her, in any form. Moreover, as is mentioned in Defendant's objections [to the Presentence Investigation Report] the female victim was, at the time of the sexual contact, seventeen years of age,

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

and she had had at least one prior full-blown sexual relationship with another male that resulted in her becoming pregnant. In this regard, Defendant does not offer this fact as an excuse for his adult misconduct, but he respectfully disagrees with the suggestion made by Mr. Turney that he is a "child sex predator", as that term was used by the investigating detectives with the City of Shelbyville Police Department.

According to the character reference letters, Mr. Neill is a "very caring and compassionate person." He knows that he has made a terrible mistake, and the prosecutions, both at the state level and at the federal level, have taken a toll on him and on his family. Numerous people wrote of the Defendant's good deeds for others and of his dedication to family and church. One particular character reference letter came from Tennessee state legislator, Rep. Jeremy Durham, who begins by saying that he is "currently practic[ing] law and also serv[ing] the 65th district of Tennessee in the state legislature", only because he was given a second chance when he made a "grave error in judgment and became the subject of a...criminal proceeding." Rep. Durham goes on to request of the Court that "...when determining Mr....Neill's sentence, [he would ask] that the Court carefully take into consideration [Mr. Neill's] entire life." Rep. Durham then makes the following observations:

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

"*Mr. Neill served as a minister for several years and comes from a very reputable family deeply committed to Christian service. He has served as a missionary across the country leading numerous people to accept Jesus Christ as their savior and volunteered to rebuild churches immediately following Hurricane Katrina. Mr. Neill and his wife also made the decision to sponsor and provide support to an impoverished child in Haiti.*

*As you may expect, the Neill family values reputation a great deal and the mere publicity of this situation has taken an enormous toll somewhat similar to any punishment the Court is prepared to render. And while Mr. Neill has admitted making a very serious mistake and fully accepts the consequences of his poorly-conceived actions, he also understands he still must pay a price. I only ask that you consider his entire life and the good he has done for society when rendering punishment on the ill-conceived act which must now be addressed.*"

Other individuals, who know Mr. Neill very well, uniformly state that Mr. Neill's actions were totally "out of character" for him. Some have said that Mr. Neill's "acts of selflessness, community service, mission work and...boundless devotion to his family" have been repeatedly demonstrated over Mr. Neill's entire lifetime. Some have also said that they "would trust" Mr. Neill with their lives and anything else that mattered to them, including their own families. Many have reiterated personal dealings with Mr. Neill where he has demonstrated abundant charity and compassion for them, their families and even strangers. One individual, a Rev. Lucas Bowling, has related several salient points that the defense suggests go to the very heart of what Section 3553(a)(1) addresses concerning the "history and characteristics" of a defendant, as follows:

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

> *"I know that Todd cares greatly for others. Even while going through a trying time, both emotionally and spiritually he has continued to think about how he could help me, my family and others. As I recall the many conversations we have had I cannot remember him ever shifting things to serve a selfish purpose. Even after he decided to plead guilty his concern was how others would be affected and how he could redeem his time for good instead of wasting it. Todd seems to possess a deep concern for others that is rare in contemporary times.*
>
> *I am aware that Todd has pled guilty to the charges brought against him. I have spoken with Todd at length about his decision, and how it affects all of those with whom he is acquainted. I know that a major factor in his plea was being able to put the case to rest and to allow all parties to heal. He has also shown great concern for how the absence will affect his family. As a man who spent nearly a year and a half deployed to Iraq, my family knows all too well the kind of impact an extended absence has. While the reasons are different, children simply know that someone very important to them is gone. I ask you to have leniency on Todd, he has never tried to deny the truth and has been forthcoming and upstanding in the way he has tried to deal with such an unfortunate situation. Please allow him to learn the lessons that an already difficult ordeal has taught him, and allow him to return to his family as quickly as legally possible. All parties realize that he will not be allowed to walk away a free man tomorrow, but a minimum sentence would be a great blessing to me, but more importantly to the family that loves him dearly."*

Finally, the defense suggests that some of the matters addressed by Mr. Neill's wife aptly demonstrate the severe consequences that Mr. Neill's conduct in this case has brought on both Mr. Neill, individually, and on his family. The Court is also respectfully reminded that Mrs. Neill has steadfastly stood by her husband throughout his transgressions, solely because she loves him and believes that his conduct was completely out of character for her husband, as follows:

> *"I am painfully aware of the charges to which my husband has pled guilty. This conduct is completely out of character for my husband. As it goes against everything I know and have seen first-hand from Todd in the many years I have known him. These charges have taken a toll on my family. Todd was once an outgoing and vivacious person. Now he has become depressed and*

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

*withdrawn. Before he left my children were extra clingy to Todd, always wanting to be with him. My daughter, who is younger, is frequently drawing pictures of her dad. They are constantly asking me if he will be back for their birthdays or back by Christmas. We just hug them and tell them that no matter what, their dad will always love them. I see the pain in their eyes every day when Todd is not here to tuck them in at night. I beg of you to be merciful in your sentencing. I pray that you will exercise leniency on his behalf. Todd is a valuable member of our family. My children need their father in their lives, as his absence is leaving a huge void. I am also suffering in his absence. He has not only been my husband, but also my best friend for 14 years. Once again I respectfully ask for mercy, not only on Todd's behalf, but for myself and my children. We need him in our lives. Our family is better because Todd is part of it."*

## IV. 18 U.S.C. § 3553(a)(2)(A):
### *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense*

Unfortunately, child pornography is one of the fastest growing areas of prosecution by the United States Department of Justice. These offenses are clearly serious, and they are appearing more frequently on federal court dockets. These cases, however, become especially difficult at sentencing as judges must determine punishment by striking a balance between punitive measures appropriate for those defendants who produce the disgusting images, or distribute them for profit, and those defendants...like Mr. Neill...who have no previous criminal history and have been an otherwise productive member of society.

The Norton
Law Firm, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

Congress' actions with respect to the child pornography guidelines have stemmed, in large measure, from the **mistaken** belief that those who view child pornography are actually child molesters. _See_, 137 Cong.Rec. S10323 (July 18, 1991) (Senator Helms in support of directing increase to base offense level); 141 Cong.Rec. S5509 (April 6, 1995) (Senator Grassley in support of directing additional increase in base level); 144 Cong.Rec. S12262 (October 9, 1998) (Senator Hatch in support of directing expanded reach of "distribution" enhancement). Under this view, punishing child pornography **possessors** seemingly serves as a proxy for punishing child sexual abusers. Respecting this case, aside from a total lack of evidence to support this belief, in general, Mr. Neill has not been convicted of, or even accused of, sexually abusing a child that was the subject of any of the images depicting child pornography.

This, it is believed, distinguishes Mr. Neill from the offenders that Congress had in mind, and should encourage this Court not to punish him for something that he has not done...and likely will never do. _See_, _United States v. Marshall_, 870 F.Supp.2d 489 (N.D. Ohio June 29, 2012) (rejecting presumption that "those who view child pornography are indistinguishable from those who actually abuse children", finding instead that the "[e]mpirical data strongly suggests that viewing child pornography does not equate to child molestation"; _United States v. Kelly_, 868 F.Supp.2d 1202 (D.N.M. June 20, 2012) (rejecting government's argument that guideline range is appropriate because of the "chance that [defendant] will molest children in the future,..." as "empirical

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

testing disproves the fear that the typical child pornography defendant will go on to molest children" and "[a]ny Guideline based on unsupported fears, rather than actual evidence, is far more likely to render an unreasonable sentence"); *United States v. Cruikshank*, 667 F.Supp.2d 697 (S.D.W.Va. 2009) ("rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers."); *United States v. Phinney*, 599 F.Supp.2d 1037 (E.D.Wis. 2009) ("[C]ourts should not assume that a defendant has or will commit additional crimes without a reliable basis."); *United States v. Grober*, 595 F.Supp.2d 382 (D.N.J. 2008) ("[T]he Court cannot make [Defendant] a surrogate for the monsters who pray on their child victims through actual contact."), *aff'd* 624 F.3d 592 (3rd Cir. 2010).

The Court of Appeals for the *Second Circuit* has considered several sentencing issues in child pornography cases, indicating concern at the length of some long terms of incarceration called for by USSG § 2G2.2. In *United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010), the Court found that the imposition of a within Guideline sentence of 233 months in a case involving distribution of child pornography via peer-to-peer file sharing programs was both procedurally and substantively unreasonable. The Court expressly critiqued the Guidelines as not based upon rational factors, but instead upon arbitrary assumptions – noting that deference to such Guidelines may not be appropriate in individual cases in

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

light of the fact that the range was not based on any empirical or rational calculus. *Dorvee*, 616 F.3d, at 186.

In *United States v. Tutty*, 612 F.3d 128 (2nd Cir. 2010), the defendant pled guilty to online receipt of pictures of young boys engaged in sex acts. The Court found procedural error in the district court's imposition of a within Guideline range sentence of imprisonment of 168 months. The panel noted the harshness of the Guidelines as applied in child pornography cases, and it reiterated its view that the Guidelines are not entitled to the usual deference because of the lack of an empirical basis underpinning them. *Tutty*, 612 F.3d, at 132. Also emphasized was the fact that the district court may depart downward from the Guidelines based on policy disagreements with the Guidelines. *Tutty*, 612 F.3d, at 132.

The defense is also aware of the recent decision in *United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012), wherein the Court struck down a sentence of one night's confinement and 10 years supervised release, as against a recommended Guideline sentence under USSG § 2G2.2 of 63 to 78 months. However, Defendant respectfully suggests that this Court can both comply with the holding in *Bistline* and structure a sentence below the recommended Guideline range in the instant case. Such a sentence would satisfy the purposes of § 3553 and comport more appropriately to the facts of Mr. Neill's offense. In this regard, when a district court hands down a sentence lower than that called for by the Guidelines, the Supreme Court has instructed that the reviewing

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

court may "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Gall v. United States*, 552 U.S. 38, 50 (2007). Further, the reviewing court "must give due deference to the district court's decision that the § 3553(a) factors… justify the extent of the variance." *Gall*, 552 U.S., at 50. *See also*, *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008).

Indeed, the *Sixth Circuit* has repeatedly approved below Guideline sentences in child pornography cases. *See*, e.g., *United States v. Weller*, 330 F.Appx 506 (6th Cir. 2009) (downward variance to 120 months [63% from the bottom of the Guidelines] from 324 to 405 months recommended Guideline range for leader and organizer of child pornography possession and distribution ring); *United States v. Cherry*, 478 F.3d 366 (6th Cir. 2007) (sentence reduction of 43% below recommended Guideline range in child pornography possession and distribution case where sentencing court stressed the seriousness of the offense, considered the defendant's willingness to get help and, after application of the factors, considered the defendant an individual entitled to an individualized sentence below the Guidelines); *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (Court upheld a 66 month [53% from bottom of Guideline range] imprisonment sentence in a child pornography case, despite the fact that the Guidelines recommended a 135 to 168 month sentence); *United States v. Rowan*, 2008 W.L. 2332527 (5th Cir. 2008) (sentence of probation

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

reasonable for a defendant convicted of possessing child pornography although the sentence called for by the Guidelines was 46 to 57 months).

Again, Mr. Neill's offense is a serious one, but a sentence below the Guideline range will still reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Mr. Neill has never been incarcerated before, and any imposed term in prison is a long time for a man who is, for the first time, being incarcerated. Further, a term of supervised release is additional, just and sufficient punishment. _Gall_, 552 U.S., at 50. Supervised release has its own repercussions. If Mr. Neill commits another similar offense while on supervised release, that release will be revoked and he must return to prison for at least five years, in addition to the penalties for any new criminal conduct. 18 U.S.C. § 3583(k). The Court should also consider the added penalty that Mr. Neill will be required to register as a sex offender wherever he resides, and he will be subject to numerous restrictions on residency, employment and other opportunities, for decades, if not for the rest of his life.

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

# V. 18 U.S.C. § 3553(a)(2)(B):
## The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

It is unquestioned that the Court must impose a sentence here which will afford adequate deterrence to people like Mr. Neill who might engage in receipt and possession of child pornography. The Eastern District of Tennessee observed in _United States v. McElheney_, 630 F.Supp.2d 886 (E.D.Tenn. 2009), that general deterrence is especially important in child pornography offenses because the Internet allows potential offenders to perpetrate the offense in the privacy of their homes, largely hidden from law enforcement. _McElheney_, 630 F.Supp.2d, at 900. Other courts have echoed that concern about technology, noting that, "[l]ong gone are the days when a person had to travel to some shady book store [to obtain child pornography]". _United States v. Marshall_, 870 F.Supp.2d, at 492. In Mr. Neill's instance, and, given his history in the Bedford County community and the community's knowledge of his family and friends, any sentence of incarceration will send a resounding message that possessing child pornography is "not okay", even if done in private and in secret. In fact, incarceration of Mr. Neill will send a clear message to others that child pornography is, and should be, roundly condemned, and that, even if a defendant had no contact with the children depicted in the images he possessed, possession alone will not ever be excused. Therefore, to the extent that other like offenders, who are productive members of society with no criminal history, will pay attention to Mr. Neill's sentence, if a period of reasonable incarceration

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

does not deter such other offenders, it is, unfortunately, safe to say that <u>nothing</u> will.

## *VI.    18 U.S.C. § 3553(a)(2)(C):*
### *The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant*

Mr. Neill has no prior criminal record, save for the events involved in this case, both directly and peripherally, which indicates that he has been able to conform his conduct to the requirements of the law. Further, the many character reference letters from family, friends and acquaintances suggest that they would trust Mr. Neill with their children, having never experienced, or even suspected, any inappropriate conduct by Mr. Neill. Additionally, the minimal number of images discovered in his possession also suggest that, unlike many, if not most child pornography offenders, Mr. Neill's offense conduct did not involve an uncontrollable urge to view, to collect, to exchange or to distribute such images.

It is also important to note that Dr. Glennon's summary and recommendations are that "[a]ll risk instruments used (The Static 99R, the IRONS, and the LSI-RNR) all suggest that Mr. Neill is likely to be a low risk, and in a group that has a low risk of recidivism". Dr. Glennon also suggests that "[s]ex offender specific treatment would do well to be <u>limited</u> to [Mr. Neill's] thinking and judgment about sexuality." There was also no evidence of substance abuse being present, or that it may emerge. Dr. Glennon also found that "Mr. Neill does not show clear signs of personality structure,…".

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

In passing, it must also be noted that Dr. Glennon found that "Mr. Neill is a warm affectionate individual, who has an intense need for affection and adulation. Because he wants affection so much, he is likely to be disillusioned and frustrated if affection is not returned. This may cause him to go to great lengths to receive the affection which is so important." This finding is being respectfully pointed out to the Court because of what Mr. Neill reported to Dr. Glennon concerning his involvement with the young lady in the church, as follows:

> *"He stated that at first all his efforts were directed toward getting her to be more active in the church, but as his relationship with the family and the young lady grew it became more personal... He said it was after he had been working to get this young lady involved with the church he found out that she became pregnant when she was 15 years old. Mr. Neill stated that his attention to this young lady was returned strongly. He knew that he had become emotionally involved with this young lady. He said that one time the victim asked him to leave his wife and marry her. He stated that he responded to her and felt a very strong attraction."*

While the defense is certain that the Court will want to assure that there is no resumption of <u>any</u> type of contact between Mr. Neill and this young lady, the defense would suggest that the Victim Impact Statement given by her should speak for itself in negating the likelihood of that recurrence. However, the Court is respectfully reminded that it has the authority, as a condition of supervised release, to prohibit Mr. Neill from having any contact, whatsoever, with this young lady, even after she attains majority. Moreover, Internet-only offenders have been found "significantly less likely to fail in the community

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

22 of 27

than actual child molesters" and that "by far the largest subgroup of internet offenders would appear to pose a very low risk of sexual recidivism." *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters*, 19 SexualAbuse 449, 463 (2007). In fact, as one district court put it, "the empirical literature generally concludes that there is little-if any-evidence of a direct correlation between viewing child pornography and the viewer's commission of 'contact' sexual offenses." <u>Marshall</u>, 870 F.Supp.2d, at 489.

### VII. 18 USC 3553(A)(2)(D): *The Need for Medical Care and Correctional Treatment in the Most Effective Manner*

As Dr. Glennon recommended, Defendant would benefit from limited sex offender specific treatment. He does also suggest, however, that pornography has a strong addictive factor, and, if child pornography has become a primary mode of satisfaction for Mr. Neill, a more extended period of treatment may be necessary. Mr. Neill is willing to undertake any course of counseling/treatment/therapy that is recommended by Dr. Glennon, and he is willing to have this made a part of this Court's sentence, whether such counseling and treatment occurs during any period of incarceration or during any period of supervised release.

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

## VII. 18 U.S.C. § 3553(a)(3) and (4):
## _The Kinds of Sentence Available, Both by Statute and as Calculated in the Sentencing Guidelines_

As the Presentence Investigation Report correctly notes, Mr. Neill is subject to a maximum term of twenty years in prison. Mr. Neill, however, although he also agrees that he has a criminal history category of I, respectfully disagrees with Mr. Turney's calculation of the Guideline imprisonment range. Mr. Neill also agrees that the Court shall impose a term of supervised release of a minimum of five years, although the Guideline requirement for such supervised release may be for life. Finally, as detailed in his objections, he believes that his Adjusted Offense Level is properly calculated at **15**, with a corresponding Guideline imprisonment range of between 18 and 24 months.

## IX. 18 U.S.C. 3553(a)(6):
## _The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who have been Found Guilty of Similar Conduct_

The Sentencing Guidelines are intended to eliminate unwarranted sentence disparities nationwide, _United States v. Newell_, 35 F.Appx 144, 145 (6th Cir. 2002), and "district courts must take account of sentencing practices in other courts to avoid disparities." _McElheney_, 630 F.Supp.2d, at 902 (E.D.Tenn. 2009). It has also been observed that "anyone seriously concerned about federal sentencing disparities [must begin by] taking a look at federal child porn cases." _United States v. Stern_, 590 F.Supp.2d 945, 961 (N.D.Ohio 2008). In _Stern_, the Northern District of Ohio was "struck by the inconsistency in the way

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

apparently similar [child pornography] cases are charged and sentenced" and stated:

> *"In short, the national sentencing landscape presents a picture of injustice. In the absence of coherent and defensible Guidelines, district courts are left without a meaningful baseline from which they can apply sentencing principles. The resulting vacuum has created a sentencing procedure that sometimes can appear to reflect the policy views of a given court rather than the application of a coherent set of principles to an individual situation." Stern, 590 F.Supp.2d, at 961.*

Again, the Court is respectfully directed to *McElheney*. Citing *Kimbrough*, the *McElheney* Court determined that it must look to the sentencing practices of other courts to adequately consider sentencing disparities. *McElheney*, 630 F.Supp.2d, at 903. In so doing, the Court observed that statistics published by the Sentencing Commission showed a widespread trend <u>away from</u> the Guideline ranges recommended by USSG § 2G2.2, and noted that "[t]he sentencing practices of other courts demonstrate [that] a Guideline sentence would create disparities in this case." *McElheney*, 630 F.Supp.2d, at 903. Consequently, downward variances in child pornography possession cases are, it is suggested, <u>common</u>. Therefore, a downward variance in this case would hardly result in a "disparity".

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

### X.     18 U.S.C. § 3553(a)(7):
### *The Need to Provide Restitution to Any Victims of the Offense*

As noted in ¶58 of the Presentence Investigation Report, restitution is not applicable in this case. 18 U.S.C. § 3663.

## XI.    Conclusion

Defendant acknowledges that punishment for his crime is appropriate and that his sentence must reflect the seriousness of his offense, promote respect for the law, and provide just punishment. He, therefore, respectfully asks the Court, in light of all information before it, to impose a sentence of eighteen (18) months in prison, followed by five years of supervise release.

This 9th day of **July, 2014**.

Respectfully submitted,

THE NORTON LAW FIRM, P.C.,

**/S/ *JOHN H. NORTON, III***
BPR No. 5069
124 East Side Square
P.O. Drawer 37
Shelbyville, TN 37162
(931) 684-4824
*Attorney for Defendant*

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

## CERTIFICATE OF SERVICE

I hereby certify that I have this **9th** day of **July**, **2014**, served via the Court's electronic filing system, a true and correct copy of the above and foregoing on counsel, as follows:

**Hon. James T. Brooks, Assistant United States Attorney**
**E-mail address:** james.Brooks@usdoj.gov

*/S/ JOHN H. NORTON, III*

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162